UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                       No. 20-CR-01880 MV

CHRISTOPHER KEE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the government's Opposed Motion to Exclude Expert Testimony. Doc. 74. The Court held a *Daubert* hearing on June 1, 2022. Docs. 67, 77. Having carefully considered the briefs, testimony, oral arguments, and relevant law, and being otherwise fully informed, the Court finds that the government's Motion is **DENIED IN PART**.

## BACKGROUND

Mr. Kee is charged with three counts of Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1153 and 113(a)(3), and one count of Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1153, 113(a)(3), and 3559(f). Doc. 71. In Counts 1 and 2, Mr. Kee is charged with assaulting Jane Doe 1 with a knife on two occasions. *Id.* at 1. In Counts 3 and 4, Mr. Kee is charged with assaulting Jane Doe 1 & 2 and John Doe 1—all of whom were adults—and John Doe 2 & 3 and Jane Doe 3 & 4—all of whom were minors—with a motor vehicle. *Id.* at 2.

Counts 3 and 4 are particularly relevant to the instant Motion. Pursuant to these counts, Mr. Kee is alleged to have rammed a 1980 GMC van carrying the alleged victims with a 2004 Ford pickup truck on June 6, 2020. Doc. 3 at 1–2; Doc. 74-1 at 1. According to the criminal complaint,

Mr. Kee allegedly "drove up behind them and rammed the van multiple times." Doc. 3 at 6. The vehicles were allegedly traveling at approximately 45 to 55 miles per hour at the time of the collisions. Doc. 74-1 at 1. Although the alleged victims contacted law enforcement, little effort was made to preserve evidence of the collisions. For example, there is no evidence of skid marks from the date of the alleged offense, and the vehicles were not taken into government custody. According to parties, the van was photographed the day after the alleged offense and then disappeared until May 2022. Transcript of *Daubert* Hearing at 62:1–3, 64:16–18, *United States v. Kee*, 20-CR-01880-MV (available upon request). Photos of the truck were taken in October 2020. Doc. 74-1 at 2. When the van resurfaced in May 2022, Mr. Kee's proposed expert, Maurice Moya, took additional photos and measurements of both vehicles. *Id.* at 3.

On May 19, 2022, Mr. Kee filed a Notice of Expert Testimony seeking to call Maurice Moya to testify as an expert in accident reconstruction. Doc. 64. Mr. Moya's proposed expert testimony includes (1) his personal observations of the two vehicles, (2) his opinion that his observations were inconsistent with how the collisions allegedly occurred, (3) his opinion that he would have observed greater physical damage had the collisions occurred as alleged, and (4) his conclusion that "there was no contact between the GMC van and the Ford truck." *Id.* at 1–2.

On May 27, 2022, the government filed the instant Opposed Motion to Exclude Expert Testimony. Doc. 74. The government objects to Mr. Moya's proposed expert testimony arguing that Mr. Moya "is not qualified to render an opinion in accident reconstruction" and that he "did not use reliable methods to generate an opinion." *Id.* at 3–4.

The Court held a *Daubert* hearing on June 1, 2022. Docs. 67, 77.

## LEGAL STANDARD

Under Rule 702 of the Federal Rules of Evidence, witnesses with the requisite "knowledge,

skill, experience, training, or education" may provide expert testimony if:

>   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand evidence or to determine a fact in issue;
>
>   (b) the testimony is based on sufficient facts or data;
>
>   (c) the testimony is the product of reliable principles and methods; and
>
>   (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. To be admissible under Rule 702, evidence must be both relevant and reliable. *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The trial judge is to maintain a gatekeeping function, only admitting evidence that is both relevant and reliable. *Id*. at 597. The Supreme Court in *Kumho Tire Co., Ltd. v. Carmichael* extended the holding in *Daubert* such that the trial judge's gatekeeping function applies not only to testimony based on scientific knowledge but also to testimony based on technical and other specialized knowledge. 526 U.S. 137, 141 (1999).

Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. In the context of Rule 702, the expert must provide testimony based on their specialized knowledge that is "beyond the ken of the average juror." *United States v. Michael*, No. CR 06-1833 MCA, 2007 WL 9657855, at *3 (D.N.M. Nov. 15, 2007) (quoting *United States v. Tapia-Ortiz*, 23 F.3d 738, 740–41 (2d Cir. 1994)). Thus, to be relevant, the expert's testimony must "help the trier of fact to understand evidence or determine a fact in issue." Fed. R. Evid. 702(a).

The Supreme Court in *Daubert* announced four factors for a trial judge to consider in assessing the reliability of evidence under Rule 702: testing, peer review, error rates, and general acceptance. *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd.*, 526 U.S. at 141. The

Court emphasized that the inquiry is meant to be a flexible one, focused on principles and methodology rather than the conclusions that are generated. *Daubert,* 509 U.S. at 595–96. The *Kumho Tire* Court reiterated that the test is flexible and held that a trial court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co., Ltd.*, 526 U.S. at 141–42. The factors enumerated in *Daubert* are not intended to be a "definitive checklist or test," but rather they should guide the trial judge in determining whether expert testimony is reliable. *Id*. at 150–52. The judge has "broad latitude" in making a reliability determination. *Id*. at 153.

Generally speaking, the Rules "encourage the admission of expert testimony." *United States v. Channon*, No. CR 13-966 JCH, 2015 WL 13666980, at *3 (D.N.M. Jan. 8, 2015) (Herrera, J.) (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.02[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2012)). Thus, the presumption "is that expert testimony is admissible." *Id.* (quoting 4 Weinstein & Berger, *supra,* § 702.02[1]). "A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." *Id.* (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment.).

## DISCUSSION

### I. Requisite Qualifications

Maurice Moya does not have the requisite qualifications to qualify as an expert witness in the field of accident reconstruction. His qualifications can be summed up as follows: Mr. Moya was employed by the Albuquerque Police Department (APD) from 1968 to 1989. Doc. 64-1 at 1. He worked in traffic investigations for approximately 6 years—until 1975. *Daubert* Tr. at 6:25–7:1–2. During his tenure as a traffic investigator, he took two college level courses in accident reconstruction, attended in-house trainings conducted by his supervisors, and trained others in

accident investigation. *Id.* at 7:6–21.

Mr. Moya's qualifications pale in comparison to the qualifications of typical accident reconstruction experts. *See, e.g.*, *Leon v. Stables*, No. CV 18-1203 JAP/JFR, 2020 WL 1976476, at *5 (D.N.M. Apr. 24, 2020) (qualifying an accident reconstruction expert who has 34 years of experience in accident reconstruction, is "a licensed professional engineer," and attends ongoing continuing education); *U.S. Rodella*, No. CR 14-2783 JB, 2014 WL 6634154, at *6–8 (D.N.M. Nov. 18, 2014) (qualifying an accident reconstruction expert who has 22 years of experience in accident reconstruction, is accredited by the Accreditation Commission for Traffic Accident Reconstruction (ACTAR), and attends ongoing continuing education); *BNSF Ry. Co. v. LaFarge Sw., Inc.*, No. CIV. 06-1076 MCA/LFG, 2009 WL 4279843, at *3–5 (D.N.M. Feb. 12, 2009) (qualifying an accident reconstruction expert who has 32 years of experience in accident reconstruction, is accredited by ACTAR, "has investigated and/or reconstructed over 3,600 motor vehicle accidents," and attends ongoing continuing education).

More importantly, Mr. Moya's qualifications are stale. In the 47 years since Mr. Moya worked in traffic investigations with the APD, he has attended just one seminar on accident reconstruction; the course was twelve years ago, and he did not receive credit for his attendance. *Daubert* Tr. at 20:16–25–21:1. In the intervening five decades, accident reconstruction methods and technology have "changed tremendously." *Id.* at 39:15. Whereas experts once used tape measures and photography to reconstruct accidents, they now reconstruct accidents using vehicles' event data recorders, aerial drone photos, total stations, 3D scanners, and complex computer programs. *Id.* at 39:21–25–40:1–11. Because Mr. Moya does not have any experience, training, or education in these modern methods or technology, he cannot qualify as an expert witness in the field of accident reconstruction.

However, Maurice Moya does have specialized "knowledge, skill, experience, training, or education" in the field of accident investigation. Fed. R. Evid. 702. Mr. Moya worked in accident investigations for the APD for six years. *Daubert* Tr. at 6:25–7:1. He has been trained in and trained others in accident investigations. *Id.* at 7:6–21. At one time, he was the head of the APD Fatal Accident Investigation team, which investigated all accidents involving serious injuries and fatalities. *Id.* at 9:2–12. He has investigated rear-end crashes numerous times. *Id.* at 9:13–15. He has also testified as an accident investigation expert as recently as two years ago. *Id.* at 6:9–16. Most importantly, Mr. Moya's testimony in the *Daubert* hearing demonstrated an understanding of motor vehicles—and the damage they may sustain in an accident—that is "beyond the ken of the average juror." *Michael*, 2007 WL 9657855, at *3; *see generally Daubert* Tr. Accordingly, the Court finds that Maurice Moya has the requisite qualifications to serve as an expert witness in the less-scientifically rigorous field of accident investigation. *See Kumho Tire Co., Ltd.*, 526 U.S. at 141 (finding that expert testimony based not only on scientific knowledge but on other technical or specialized knowledge is admissible under *Daubert*).

This expert designation will limit Mr. Moya's testimony. As an accident investigation expert, Mr. Moya is not qualified to reconstruct an accident. Thus, he may not render an ultimate opinion on if and how an accident occurred. However, Mr. Moya may draw on his expertise as an accident investigator to discuss his investigation in the instant case and to opine generally on the allegations. Specifically, the Court holds as follows: Mr. Moya may testify regarding his personal observations of the vehicles. Mr. Moya may opine regarding whether his observations were consistent with how the collisions allegedly occurred. Mr. Moya may also opine regarding what he would have expected to observe had the collisions occurred as alleged. However, Mr. Moya may not opine regarding whether there was any contact between the GMC van and the Ford truck.

## II.  Relevant Testimony

Mr. Moya's proposed expert testimony is relevant because his specialized knowledge will help the jury "understand evidence [and] determine a fact in issue." Fed. R. Evid. 702(a). First, Mr. Moya's testimony will help jurors understand the physical damage each vehicle has sustained. *See id.* Second, his testimony will help jurors determine whether such damage is consistent with how the collisions allegedly occurred. *See id.* Such testimony is highly relevant because it bears directly on whether Mr. Kee committed assault with a motor vehicle, as charged in Counts 3 and 4. *See* Doc. 71. Moreover, because Mr. Moya's specialized knowledge of motor vehicles and vehicular accidents is "beyond the ken of the average juror," his testimony is relevant to the instant case. *Michael*, 2007 WL 9657855, at *3.

## III.  Reliable Testimony

The dearth of evidence in the instant case complicates the Court's reliability determination. As discussed *supra*, the scene of the alleged collisions was not preserved, so there is no aerial footage of skid marks or gouges in the roadway. The vehicles were not taken into government custody at any point, so it is difficult to exclude the possibility that the vehicles were damaged or repaired after the alleged offense, but before they were inspected and photographed for the instant case. Both vehicles are too old to have event data recorders, from which experts could download potential crash data.

In an ordinary case, the Court would expect an expert to thoroughly investigate and reconstruct the alleged accident. Yet with such scarce evidence, most modern accident reconstruction methods and technology are inapplicable. As such, the government's rebuttal witness conceded that he would have used the same outdated methods that Mr. Moya actually used to investigate the instant case. *Daubert* Tr. at 54:3–19.

Based on this concession, and in light of the presumption "that expert testimony is admissible," the Court finds that Mr. Moya's proposed expert testimony is sufficiently reliable under *Daubert*. *Channon*, 2015 WL 13666980, at *3; *Daubert*, 509 U.S. at 593–94 (listing general acceptance of a method as indicative of reliability). The Court reaches this conclusion for several reasons. First, the Court highlights that by precluding Mr. Moya from testifying on whether the vehicles collided, the Court has prevented Mr. Moya from offering his most prejudicial and least reliable opinion. Indeed, given the paucity of evidence in this case, it is unlikely that any expert could have rendered a reliable opinion on whether a collision occurred between the vehicles. Hence, the Court has limited Mr. Moya's testimony to only his most reliable opinions.

Additionally, the Court notes that Mr. Moya's use of measuring tape, photography, and visual inspection was reasonably reliable under *Daubert* to reach his remaining, admissible opinions. *See id.* at 10:9–14; *Daubert*, 509 U.S. at 593–94. Indeed, these opinions, which rely on his observations and experience as an accident investigator, barely extend beyond lay testimony. *See, e.g.*, *Daubert* Tr. at 11:13–21, 26:6–8 ("What stood out the most to me was there was a rear tire assembly for a spare tire on the back of the van that stuck out maybe 4 to 5 inches. And that would have came into contact first with the red pickup truck. And there was also two tow bars on the side of the pickup truck that would have came into contact with the van, and there is no indication that that occurred. . . . [C]ommon sense tells you that that part had to be struck first.").

As to the government's argument that Mr. Moya's testimony is not reliable because his report has "no science behind it," the Court refers to *Kumho Tire*, which made plain that experts may testify based not only on scientific knowledge, but on other forms of technical or specialized knowledge. *Daubert* Tr. at 65:23–25–66:1–2; *Kumho Tire Co., Ltd.*, 526 U.S. at 141. As discussed *supra*, Mr. Moya has specialized knowledge in the field of accident investigation, and as he

8

testified at the *Daubert* hearing, Mr. Moya used this knowledge to investigate whether the GMC van and Ford truck collided as alleged. *See generally Daubert* Tr.

Finally, the Court reiterates its gatekeeping role under *Daubert*: the Court's inquiry is focused on principles and methodology rather than the conclusions that are generated. *Daubert*, 509 U.S. at 595–96. Thus, the Court need not hinge its reliability determination on the soundness of Mr. Moya's conclusions, notwithstanding his failure to fully account for variables such as tire height, speed, or metallurgic strength. *Daubert* Tr. at 23:3–5, 26:9–14, 31:13–25–32:1–5. Having concluded that Mr. Moya used reliable methods and principles to reach his opinions, the Court submits that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the government's Opposed Motion to Exclude Expert Testimony [Doc. 74] is **DENIED IN PART**, consistent with this Memorandum Opinion and Order.

ENTERED this 3rd day of June 2022.

```
_____
MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE
```